IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-2202

UNITED STATES OF AMERICA,

        Plaintiff,

v.

HUNT BUILDING CO., LTD,

        Defendant.

_____

**COMPLAINT**
_____

        Plaintiff, the United States of America, by authority of the Attorney General of the United States, at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), by and through their undersigned attorneys, files this Complaint and alleges as follows:

## INTRODUCTION

    1.    This a civil action for injunctive relief and civil penalties brought pursuant to Section 309(b) and (d) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1319(b) and (d), against Hunt Building Company, Ltd. ("Defendant" or "Hunt Building"), a Texas corporation, for failure to comply with the conditions of a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, and for violations of administrative orders issued pursuant to Section 309(a) of the CWA, 33 U.S.C. § 1319(a).

## JURISDICTION, VENUE, AUTHORITY AND NOTICE

2. This Court has jurisdiction over the parties and subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 33 U.S.C. § 1319.

3. Venue is proper in this District pursuant to 33 U.S.C. § 1319(b) and 28 U.S.C §§ 1391(b) and 1395(a), because it is the judicial district where Defendant conducts business and where the alleged violations occurred.

4. The United States has provided notice of this action to the State of Colorado pursuant to Section 309(b).

## DEFENDANT

5. Hunt Building is a corporation organized under the laws of Texas and is a "person" as defined in Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and 40 C.F.R. § 122.2.

6. Hunt Building is engaged in the business of demolishing, constructing, remodeling and renovating privatized housing at military bases throughout the United States and at times relevant to the Complaint.

7. From approximately December 10, 2007 through January 26, 2010, Hunt Building completed demolishing, construction, remodeling and/or renovation work, resulting in the disturbance of at least 350 acres, at two housing areas known as Pine Valley and Douglass Valley, located on the United States Air Force Academy ("AFA") in Colorado Springs, Colorado.

## LEGAL BACKGROUND

### Clean Water Act and Water Pollution Control Act

8. The Clean Water Act is designed to restore and maintain the chemical, physical and biological integrity of the nation's waters. 33 U.S.C. § 1251(a).

9. To accomplish the objectives of the Act, Section 301(a), 33 U.S.C. § 1311, prohibits the "discharge of any pollutant" by any person except as authorized by a National Pollutant Discharge Elimination System ("NPDES") permit issued by the EPA or an authorized State pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

10. Pursuant to 40 C.F.R. § 122.41, an NPDES permit must include all the conditions in the paragraphs of 40 C.F.R. § 122.41, including the duty to comply with the permit.

11. In 1975, EPA authorized the State of Colorado to administer the NPDES program for discharges within Colorado. 40 Fed. Reg. 16713-16714 (April 14, 1975). However, this authorization did not cover federal facilities in Colorado; for these, EPA retained the primary authority for administering the NPDES program. The AFA is a federal facility.

12. Section 402(p) of the CWA, 33 U.S.C. § 1342(p), requires an NPDES permit for storm water discharges associated with industrial activity.

13. EPA regulations define the term "storm water discharge associated with industrial activity" to include storm water discharges from construction activities, including clearing, grading, and excavation activities, that result in a disturbance of five or more acres of total land area. 40 C.F.R. § 122.25(b)(14)(x). Construction activity also includes the disturbance of less than five acres of total land area that is part of a larger common plan of development or sale if the larger common plan will ultimately disturb equal to or greater than five acres. Id.

3

14. Under EPA regulations, persons who discharge or who propose to discharge storm water associated with industrial activity are required to apply for an individual permit or to seek coverage under a promulgated storm water general permit. 40 C.F.R. §§ 122.21 (a) and (c), 122.26(c), 122.28. In applying for coverage under a storm water individual or general permit, a potential permittee must provide the necessary information on the basis of which EPA may evaluate the appropriateness of the issuance of and the terms of any such permit.

15. In 2003, EPA issued a Final NPDES General Permit for Storm Water Discharges from Construction Activities ("CGP"), authorizing discharges of storm water under certain conditions. 68 Fed. Reg. 39087-39091 (July 1, 2003). The CGP covers, among other areas, federal facilities in Colorado, including the AFA. See CGP, Appendix B.8.

16. Although the CGP expired in 2008 and was reissued, dischargers covered under the 2003 CGP continued to be authorized to discharge according to the 2003 CGP's terms. 73 Fed. Reg. 40338 (July 14, 2008).

17. To obtain authorization to discharge storm water under the CGP, a discharger is required to submit a Notice of Intent ("NOI"). CGP, Part 2; See 40 C.F.R. § 122.28(b)(2). Discharges are not authorized if an NOI is incomplete or inaccurate or the permittee was never eligible for permit coverage. Id. The CGP requires that each NOI provide, among other things, the total acreage, to the nearest quarter of an acre, for which the discharger requests permit coverage. CGP § 2.2.B.9.

18. Prior to the NOI, a storm water pollution prevention plan ("SWPPP"), which sets forth a plan to control and reduce pollutants in storm water discharges from construction

activities, must be developed and implemented for each construction project covered by the CGP. CGP, Part 3.

19.     SWPPPs must be implemented as written from commencement of construction activity until final stabilization is complete. CGP § 3.1.D.

20.     Each SWPPP must be signed and certified, CGP § 3.12.D and Appendix G, and include, among other things: a description of the construction activity, including an estimate of total area expected to be disturbed, CGP § 3.3.B; a legible site map, including locations of major structural and nonstructural best management practices ("BMPs"), CGP § 3.3.C; a description of all BMPs that will be implemented as part of the construction activity to control pollutants in storm water discharges, CGP § 3.4.A; a description of stabilization practices for the site, CGP § 3.4.B; a description of measures to minimize off-site vehicle tracking of sediments onto paved surfaces and the generation of dust, CGP § 3.4.G; a description of pollutant sources from areas other than construction and the controls and measures to be implemented at those sites to minimize pollutant discharges, CGP § 3.4.I; documentation of permit eligibility relating to federally-listed endangered species, CGP § 3.7; and a copy of the CGP and NOI, CGP § 3.12.A.

21.     The SWPPP, including the site map, must be amended whenever there is a change in design, construction, operation, or maintenance at the construction site that has or could have a significant effect on the discharge of pollutants to the waters of the United States that has not been previously addressed in the SWPPP. CGP § 3.11.A.

22.     The SWPPP must also be revised to include additional or modified BMPs designed to correct problems identified in inspections. CGP § 3.11.C.

23. A central requirement of the CGP is the selection of BMPs, which must be implemented as described in the SWPPP. CGP §§ 3.1.D, 3.4.A. BMPs are control measures designed to "prevent or reduce the discharge of pollutants to waters of the United States." CGP, Appendix A.

24. BMPs, and other control measures, must be properly installed, operated, and maintained in accordance with relevant manufacturer specifications and good engineering practices. If periodic inspections or other information indicate a control has been used inappropriately, or incorrectly, the operator must replace or modify the control for site situations as soon as practicable. CGP § 3.13.A; see CGP § 3.6A.

25. The CGP also imposes additional requirements, including, inter alia: preventing litter, construction debris, and construction chemicals from becoming a pollutant source in storm water discharges, CGP § 3.13.C, and removing any off-site accumulation of sediment to minimize off-site impacts, CGP § 3.13.B.

26. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator of the EPA to commence a civil action to obtain appropriate relief, including a permanent or temporary injunction, when any person violates any permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, or violates any order issued by the Administrator of the EPA.

27. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), the court may impose civil penalties not to exceed $32,500 per day for each day in which such violation occurred after March 15, 2004 through and including January 12, 2009, 69 Fed. Reg. 7121 (Feb.

6

13, 2004), and $37,500 for each day in which such violation occurred on or after January 12, 2009, see 73 Fed. Reg. 75340, 75345 (Dec. 11, 2008).

## GENERAL ALLEGATIONS

28.     Hunt Building is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and subject to the requirements of the Act.

29.     At all times relevant to this action, Hunt Building engaged in construction activities at Pine Valley and Douglass Valley (collectively, "Sites") that resulted in the disturbance of over five acres.

30.     At all times relevant to this action, Hunt Building was required to obtain NPDES permit coverage for its storm water discharges from construction activities, and to comply with all applicable requirements and conditions under the Act, its regulations, and the CGP. 33 U.S.C. § 1342; 40 C.F.R. §§ 122.21, 122.26.

31.     On February 12, 2008, the Colorado Department of Public Health and Environment ("CDPHE") issued an order directing Hunt Building to stop all renovation, demolition, and remodeling activities at the Pine Valley construction site after discovering asbestos contamination. Asbestos is a toxic pollutant listed in 40 C.F.R. § 401.15.

32.     EPA inspections on May 5, 2008, July 24, 2008, April 28, 2009, and May 19, 2009, revealed numerous instances of Hunt Building's failure to comply with the requirements of the CGP permit for the discharge of storm water from these Sites.

33.     Violations of storm water requirements at these Sites include, but are not limited to: ground disturbance beyond the CGP coverage areas; failure to prepare and submit an accurate NOI; failure to prepare an adequate SWPPP and update accordingly; failure to prevent or

minimize the discharge of sediments and asbestos; and failure to properly design, implement or maintain BMPs.

34.     EPA inspections on May 5, 2008 and July 24, 2008 also revealed that the Pine Valley and Douglass Valley construction sites were contaminated with asbestos.

35.     In response to these violations, EPA, pursuant to Section 309(a) of the Act, 33 U.S.C. § 1319(a), issued to Hunt Building an Order for Compliance on July 7, 2008 and an amended Order for Compliance on August 22, 2008 (collectively, "Administrative Orders").

36.     Based on EPA inspections, and other information and knowledge, Hunt Building failed to fully comply with these Administrative Orders.

## FIRST CLAIM FOR RELIEF
### (Failure to Comply with the CGP)

37.     Paragraphs 1 - 36 are realleged and incorporated herein by reference.

### Notice of Intent

38.     On January 3, 2008, Hunt Building submitted an NOI requesting authorization under the CGP to discharge to the Fountain Creek Watershed for an estimated 30.5-acre area to be disturbed and designated as the "Air Force Academy PPV Housing" project. Although the NOI did not explicitly name "Pine Valley" or "Douglass Valley," these were the only two construction sites within the "Air Force Academy PPV Housing" area during EPA inspections.

39.     EPA issued CGP permit certification number COR10000F, authorizing Hunt Building to discharge to the Fountain Creek Watershed for a 30.5-acre site designated as the "Air Force Academy PPV Housing" project.

40.     A May 5, 2008 EPA inspection revealed that ground disturbance activities at the Sites were greater than 30.5 acres.

8

41. On or about July 19, 2008, Hunt Building amended the NOI to list the estimated area to be disturbed as 350 acres. Coverage under CGP permit certification number COR10000F continued.

42. From January 3, 2008 through July 19, 2008, Hunt Building's NOI did not accurately list the amount of acreage to be disturbed at the Pine Valley and Douglass Valley construction sites, in violation of Part 2 of the CGP.

## Storm Water Pollution Prevention Plan

43. On or about December 4, 2007, Hunt Building prepared SWPPPs for the Pine Valley and Douglass Valley construction sites. Amended SWPPPs for the Sites were prepared on or about July 16, 2008.

44. Section 3 of the CGP lists the requirements for SWPPPs that must be developed and implemented for each construction project covered by the CGP.

45. The May 5, 2008 EPA inspection revealed that Hunt Building failed to comply with a number of CGP SWPPP requirements, including:

 a. The Pine Valley SWPPP was not signed and certified, in violation of CGP § 3.12.D and Appendix G § 11; failed to include an accurate description of ground disturbance activities, in violation of CGP § 3.3.B; failed to provide a description of BMPs that would protect storm drain inlets from asbestos demolition activities, in violation of CGP § 3.1.B.2; and failed to be updated to account for changed conditions, such as the flow of asbestos from construction and/or demolition debris, in violation of CGP § 3.11.

 b. The Douglass Valley SWPPP site map failed to show areas of renovation and additions, in violation of CGP § 3.3.C.

9

      c.      The Pine Valley and Douglass Valley SWPPPs both failed to adequately address the controls for non-construction pollutants, in violation of CGP § 3.4.I.

46.      The April 28, 2009 EPA inspection revealed that the Pine Valley and Douglass Valley SWPPPs were inadequate because they failed to identify the contractors involved in implementing and inspecting BMPs, in violation of CGP § 3.11.

### Best Management Practices (BMPs)

47.      The CGP requires Hunt Building to implement pollution control measures, such as BMPs, to control pollutants in storm water discharges. CGP § 3.4. Hunt Building must properly select, install and maintain these BMPs in accordance with relevant manufacturer specifications and good engineering practices. CGP § 3.13.A. Erosion and sediment control measures must also be maintained in effective operating condition. CGP § 3.6. If periodic inspections or other information indicates a pollution control has been used inappropriately, or incorrectly, the operator must replace or modify the control for site situations as soon as practicable, but no later than the next storm event. CGP §§ 3.4, 3.6. BMPs and other pollution controls must be described in the SWPPP, and the SWPPP must be implemented as written. CGP §§ 3.1.D and 3.4.

48.      The May 5, 2008 EPA inspection of the Pine Valley and Douglass Valley construction sites found Hunt Building's BMPs deficient in at least the following respects, in violation of the CGP, Part 3:

      a.      Hunt Building's chosen method of containing sediment by use of sediment logs was an inappropriate BMP because the logs were not trenched and failed to prevent sediment from going beneath them;

10

   b.  sand stockpiles were left unprotected and allowed rock socks to be torn and damaged;

   c.  storm drains were unprotected from construction debris and asbestos contamination; and

   d.  sediment build-up was observed on the roads.

 49. The July 24, 2008 EPA inspection of the Pine Valley site found Hunt Building's BMPs deficient in at least the following respects, in violation of CGP, Part 3:

   a.  at least one storm drain in a construction area was unprotected from construction debris and sediment; and

   b.  at least one storm drain in a demolition area had no BMPs.

 50. The April 28, 2009 EPA inspection of the Sites found Hunt Building's BMPs deficient in at least the following respects, in violation of CGP, Part 3:

   a.  BMPs were not installed in accordance with the SWPPPs, including, straw wattles and silt fences that had not been trenched in;

   b.  BMPs were not maintained, including, drain covers that failed to adhere to drain inlets, a drain cover and a silt fence had fallen into a storm drain, silt fences were stretched and/or torn and/or punctured by stakes, dandy bags were torn, and straw wattles were deteriorated or damaged; and

   c.  BMPs were not implemented in accordance with the SWPPPs, including, unprotected storm drains and pipe inlet, graded areas were absent of controls to minimize runoff, sediment had escaped onto streets, absence of vehicle track-out pads in all areas, silt fences and

11

straw wattles failed to extend to areas where ground disturbance had occurred, and certain inlet covers were not secured as described in the SWPPPs;

51. At a final EPA inspection of the Sites on May 19, 2009, Hunt Building's BMPs were deficient in at least the following respects, in violation of CGP, Part 3:

    a. BMPs were not installed or maintained for all storm drains, dirt piles, and graded areas; and

    b. failed to maintain or replace at least one vehicle track-out pad and deteriorating or damaged straw wattles and rock socks.

52. Hunt Building repeatedly violated the terms and conditions of the CGP, issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, covering the Sites.

53. Section 309 (b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provide that any person who violates any permit condition or limitation in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraph 27.

## SECOND CLAIM FOR RELIEF
### (Failure to Comply with EPA Administrative Orders)

54. Paragraphs 1 - 53 are realleged and incorporated herein by reference.

55. On or about July 7, 2008, EPA issued an Order for Compliance ("July Order") to Hunt Building pursuant to Section 309(a) of the Act, 33 U.S.C. § 1319(a).

56. Hunt Building responded with an intent to comply with the July Order.

57. The July Order noted several violations of the CGP, including a failure to obtain permit coverage for all areas of ground disturbance; inadequate SWPPP requirements; and a failure to implement and modify BMPs.

58. The July Order required Hunt Building to, among other things:

    a. Within 48 hours, install and maintain BMPs at all storm drains in or adjacent to areas of asbestos and soil removal activities in Pine Valley. (July Order ¶ 31). The BMPs implemented must ensure no debris or pollutants will enter the storm drains. (Id.) The BMPs must be inspected daily and after each precipitation event to ensure their effectiveness. (Id.);

    b. Within 48 hours, install and maintain BMPs downstream from the asbestos and soil removal activities to prevent debris and/or sediment from entering the tributary to West Monument Creek. (July Order ¶ 32). These BMPs also were required to be inspected daily and after each precipitation event to ensure their effectiveness. (Id.); and

    c. Within 24 hours of completing the installation of BMPs, to update the SWPPPs for these activities. (July Order ¶ 34).

59. On July 18, 2008 and July 25, 2008, Hunt Building completed further soil sampling at the Pine Valley construction site downstream from asbestos and soil removal activities to determine if asbestos was migrating towards West Monument Creek. Samples PV-S-10 and PV-S-19 were found to be positive for asbestos.

60. At the July 24, 2008 EPA inspection at least one unprotected storm drain in the Pine Valley demolition area that flowed to confirmed asbestos areas was observed. During this inspection Hunt Building also confirmed that Douglass Valley was contaminated with asbestos.

In areas where basement foundations had been buried, surface soil samples showed asbestos contamination.

61. On August 22, 2008, EPA issued a First Amended Order for Compliance ("Amended Order"). The Amended Order required Defendant to, among other things, inspect BMPs daily, immediately address any BMP deficiencies, treat the entire Pine Valley construction site as potentially contaminated with asbestos and construct BMPs around the entire area. (Amended Order ¶¶ 37, 40). For Douglass Valley, the Amended Order required that Hunt Building sample for asbestos and install storm water BMPs around buried basement sites to ensure that sediment or debris would not leave the construction area. (Amended Order ¶¶ 43, 44 and 46).

62. At the April 28, 2009 EPA inspection, numerous BMP violations were observed at the Sites, including, but not limited to, unprotected storm drains; lack of controls in graded areas to minimize runoff; pipe inlets were unprotected; failure to install vehicle track-out pads; sediment in streets; improperly installed and damaged straw wattles and silt fences; and general housekeeping issues.

63. During the April 28, 2009 inspection, EPA inspectors also noted that the SWPPPs had not been updated, as required by the July Order, and failed to describe the locations and types of BMPs and that the Site map did not include at least one dumpster.

64. During EPA's final inspection on May 19, 2009, several BMP violations were again observed, including, a failure to take corrective action and/or install or maintain BMPs for all storm drains, dirt piles, and graded areas; failure to maintain at least one vehicle track-out pad

and various straw wattles; and failure to replace deteriorating or damaged straw wattles and rock socks.

65. Upon information and belief, Hunt Building failed to fully perform the tasks required by the July Order and Amended Order.

66. Section 309 (b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), provides that any person who violates an order issued by the EPA Administrator under Section 309(a) of the CWA, 33 U.S.C. § 1319(a), shall be subject to injunctive relief and a civil penalty. The statutory maximum civil penalty amounts that may be awarded per day for each violation are set forth in Paragraph 27.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court grant the following relief:

67. Assess civil penalties against Hunt Building of up to $32,500 per day for each violation occurring March 16, 2004 through and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

68. Award the United States of America its costs and disbursements in this action; and

69. Grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

Dated: 8/6/14

NATHANIEL DOUGLAS
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Dated: 8/6/14

STACY D. COLEMAN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
601 D Street NW
Washington, DC 20004
202-305-0302 (voice)
202-616-6583 (fax)
stacy.coleman@usdoj.gov

OF COUNSEL:

Margaret J. (Peggy) Livingston
Senior Enforcement Attorney
U.S. Environmental Protection Agency, Region 8
1595 Wynkoop Street
Denver, Colorado 80202
(303) 312-6858
Livingston.Peggy@epa.gov

16